UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ ) | | Civil Action No. |
| AMY LIMOLI ) | | |
| ) | | |
| Plaintiff ) | | |
| ) | | |
| v. ) | | |
| ) | | |
| ) | | |
| DELTA AIRLINES, INC., ) | | |
| ) | | |
| MYKAL DENT, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |
| _____ ) | | |

**COMPLAINT AND JURY DEMAND**

This is an action for damages and other relief arising out of Amy Limoli's

employment by Defendant Delta Airlines, Inc. ("Delta"), and the supervision of her

employment by Mykal Dent.  The matter sounds primarily in violations of 29 U.S.C.

2601 et. seq., the Family Medical Leave Act ("FMLA").

**PARTIES**

1.     The Plaintiff, Amy Limoli, is an individual who lives in Londonderry, New

       Hampshire.  At all times relevant to the complaint, the Plaintiff was employed in

       Boston, Massachusetts.

2.     The Defendant, Delta Airlines Inc. ("Delta"), is a corporation with its principal

       place of business located in Atlanta, Georgia.  Delta's registered agent in

1

Massachusetts is Corporation Service Company located at 84 State Street in Boston, Massachusetts.

3.    The Defendant, Mykal Dent, is an individual whose current domicile is presently unknown, but whose place of business at all pertinent times was Delta Airlines, Inc. in Boston, Massachusetts.

## JURISDICTION AND VENUE

4.    The complaint alleges violations of 29 U.S.C. § 2617(a)(1) et. seq., the Family Medical Leave Act.  Thus, there is "federal question jurisdiction" pursuant to 28 U.S.C. § 1331.  The Court has supplemental jurisdiction of the other related claims pursuant to 28 U.S.C. § 1367 which arise out of the same transaction or occurrence.  All relevant facts and the gravamen of the complaint occurred in the Commonwealth of Massachusetts.

5.    Venue is proper in the District of Massachusetts pursuant to 28 U.S.C. §1391(b) because the facts giving rise to the claims occurred within this district.

## FACTS COMMON TO ALL COUNTS

6.    Limoli began her career in the airline industry in March of 2001, when she was hired by Northwest Airlines to work at the ticket counter.

7.    In 2008 Limoi began her employment with Delta Airlines Inc. ("Delta") when Delta purchased Northwest.

8.    Delta employed Limoli for approximately nine (9) years, beginning in April 2008 until April 2017.  Limoli would have remained at Delta but for the events related below.

9.      Limoli suffers from a chronic sinusitis.  As a result, she would repeatedly become ill with the same symptoms and was forced to use accrued sick time.

10.     While she was still employed with Northwest, Limoli's manager at the time suggested that she apply for FMLA.

11.     Chronic sinusitis is a "serious health condition" as defined in 29 U.S.C. §2611(11).

12.     In January of 2008, Limoli sought and was approved for leave under the FMLA by her primary care physician.

13.     Thereafter, Limoli would take leave when necessary to attend appointments with her doctors or when her condition required her to rest.

14.     Limoli always followed the notice protocol required by the FMLA and Delta when requesting leave on a specific date or range of dates.

15.     Each year, between 2008 and 2017, Limoli sought renewal and was approved for leave under the FMLA for her chronic sinusitis.

16.     In addition to FMLA leave for her own health, Limoli sought and was approved for a separate leave claim in 2010 to care for her step daughter, who was born with one kidney and required substantial care.

17.     In March of 2014, Limoli's step daughter received a kidney transplant surgery. Limoli took FMLA leave for the surgery and for scheduled post operation visits thereafter.

18.     Limoli continued her employment without any major incidents.

19.     However, Limoli began to feel resentment and pressure from her superiors, which culminated in her termination on April 21, 2017, when Limoli was pretextually

terminated for alleged "unacceptable reliability."

20. On information and belief, Delta was intent on terminating Limoli's employment for lawfully taking leave pursuant to the FMLA.

21. On May 26, 2016, Limoli was injured at work when she tripped over a suitcase and hyperextended her left knee.  She was prescribed physical therapy and was put on a work restriction by her physician until September 19, 2016.

22. Upon her return, Limoli had a meeting with her immediate supervisor, Gabriella Spagnolo.

23. Spagnolo told Limoli that the purpose of the meeting was to ensure that Limoli was healthy enough to work.

24. During the one on one meeting, Ms. Spagnolo and Limoli discussed her return to work, as Ms. Spagnola wanted to make sure that Limoli was back to 100 percent and feeling back to her normal self.

25. This meeting did not concern Limoli's overall attendance nor was it intended to criticize Limoli for any alleged misconduct.

26. Nonetheless, this innocuous meeting was subsequently used as evidence of her alleged "unacceptable reliability" in her pretextual termination.

## Pretextual Termination

27. On March 30, 2017, Limoli left her home in Londonderry, New Hampshire. She was running a few minutes behind schedule.  Limoli's shift began at 12:00 p.m.

28. Limoli was feeling ill, but made a conscious decision to work through the illness.

29. She arrived at the terminal and temporarily parked in front of the building to clock in.

30.     Limoli clocked in to begin her shift at 11:56 a.m., got back in her car, and parked
        in the lot.

31.     Delta employees may clock in as early as six (6) minutes prior to their shift
        beginning but will not be paid for that time.

32.     Limoli came back into the terminal and into the breakroom where a shift briefing
        meeting was about to begin.  Limoli then entered the redcoat office where her
        locker was located to drop off her belongings before returning to the shift briefing
        meeting on time at approximately 12:00 p.m.

33.     The Delta Operations Manager, Mykal Dent, claimed that Limoli was four (4)
        minutes late and initiated an investigation into Limoli's tardiness.

34.     In a letter recommending termination of employment, Dent wrote that "Red
        Coat/Amy Limoli, has been advised of the need to improve her
        performance/reliability on the following occasions…Amy has been verbally
        coached about her unacceptable reliability on September 19, 2016 1:1
        Conversation-Attendance."

35.     This statement was false, as the September 19, 2016 conversation was in regard to
        her health and physical ability to do her job after being out for four months.

36.     On April 1, 2017, Limoli was suspended "pending a review for continued
        employment."

37.     On April 21, 2017, Limoli's employment was terminated.

38.     Limoli followed an internal procedure that allowed her to appeal the decision to
        terminate her employment, but on June 20, 2017, the decision was affirmed.

39.     The investigation, suspension, and termination of Limoli's employment were

pretextual.

40.     The true motive for Limoli's termination was retaliation for taking duly approved

leave pursuant to FMLA, and to prevent her from seeking and being approved for

FMLA leave in the future.

41.     In addition, Limoli was denied unemployment insurance as the Defendants

dishonestly claimed that she was terminated for cause.

42.     Limoli appealed the decision of the Unemployment Assistance Department and

the decision was reversed on August 8,2017.

## COUNT I

### Interference with Use of the Family and Medical Leave Act, 29 U.S.C. §2601 et seq.
(Against all Defendants)

43.     The Plaintiff repeats and reasserts the allegations contained in the above

paragraphs and incorporates them by reference as if fully and completely set forth

herein.

44.     The Plaintiff's chronic sinusitis condition constituted a serious health condition

pursuant to 29 U.S.C. §2611(11).

45.     The Defendants are employers under the FMLA, 29 U.S.C. §2611(4), and subject

to its provisions.

46.     Pursuant to the FMLA, 29 U.S.C. §2612, the plaintiff was entitled to take up to

twelve weeks of intermittent leave during any 12-month period.

47.     The Defendants had a duty to refrain from interfering with, restraining, and/or

denying the exercise or the attempt to exercise the Plaintiff's rights under 29

U.S.C. §§2611, et seq.

48.     As more particularly described above, the Defendants interfered with the

Plaintiff's exercise of her rights under FMLA by, inter alia, initiating a pretextual investigation containing false statements, suspending her during the investigation, and by dismissing her from Delta's employ for having exercised her rights under the statute.

49.     The interference described above violated the Plaintiff's rights under the FMLA.

50.     The Defendants are liable to the Plaintiff for violating her rights under the FMLA, 29 U.S.C. §2615.

51.     As a direct and proximate result of the acts described above, the Plaintiff was greatly damaged.

## COUNT II

**Retaliation for Use of the Family and Medical Leave Act, 29 U.S.C. §2601, et seq.**
(Against all Defendants)

52.     Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

53.     The plaintiff was an eligible employee under the definitional terms of the Family and Medical Leave Act, 29 U.S.C. §2611(2)(a)(i)(ii).

54.     The plaintiff sought and was approved for leave for a serious health condition.

55.     The plaintiff was entitled to receive leave pursuant to the FMLA.

56.     The plaintiff provided notice to the defendants that she suffered from a serious health condition and that she needed leave to recover from a serious health condition.

57.     Taking approved leave for a serious health condition is statutorily protected conduct.

58.     Retaliation for the exercise of rights protected by the FMLA is a violation of law,

29 U.S.C. §2615(a).

59.   By initiating a pretextual investigation containing false statements, suspending her during the investigation, and by dismissing her from Delta's employ for having exercised her rights under the statute, the defendants violated 29 U.S.C. §2615(a).

60.   As a direct and proximate result of the conduct of the Defendants, Plaintiff has suffered and continues to suffer in many ways including, without limitation, loss of income, loss of employment and retirement benefits, loss of professional opportunities, loss of professional reputation and emotional distress.

## COUNT III

### Tortious/Intentional Interference with a Contract
(Against Dent, Individually)

61.   Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

62.   There was an employment contract between the Plaintiff and Delta.

63.   Defendant Dent was aware of Plaintiff's employment contract with Delta.

64.   Defendant Dent, with malice and improper motive and/or through the use of improper means, intentionally interfered with Plaintiff's employment contract with Delta.

65.   As a direct and proximate result of Dent's conduct, Plaintiff has suffered and continues to suffer in many ways including, without limitation, loss of income, loss of employment and retirement benefits, loss of professional opportunities, loss of professional reputation and emotional distress.

## COUNT IV

### Wrongful Termination Against Public Policy

(Against Delta Airlines, Inc.)

66.     Plaintiff repeats and reasserts the allegations contained in the above paragraphs and incorporates them by reference as if fully and completely set forth herein.

67.     The termination of Plaintiff's employment in response to her assertion of her statutorily protected rights constitutes a violation of clearly established public policy.

68.     As a direct and proximate result of the conduct of the Defendants, Plaintiff has suffered and continues to suffer in many ways including, without limitation, loss of income, loss of employment and retirement benefits, loss of professional opportunities, loss of professional reputation and emotional distress.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court:

a.     Order judgment in Plaintiff's favor in such an amount as will fully compensate her for her losses to the greatest extent allowed by law;

b.     Order such payment of punitive damages as are allowed by law;

c.     Order reinstatement of the Plaintiff to her former position with Delta pursuant to 29 U.S.C. § 2617(a)(1);

d.     Order payment of interest, costs and attorney's fees pursuant to 29 U.S.C §2617(a)(1) and any other statute or common law theory applicable to these facts; and

e.     Order such further relief as this Court deems fair and just.

## JURY DEMAND

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY ON ALL ISSUES**

**SO TRIABLE.**

RESPECTFULLY SUBMITTED,
PLAINTIFF

Amy Limoli,
By and through her attorneys,

Dated: March 23, 2018

  /s/ *Robert S. Sinsheimer*
Robert S. Sinsheimer, BBO No. 464940
Wesley B. Stoker, BBO No. 692159
Sinsheimer and Associates
92 State Street, 9th Floor
Boston, MA 02109
(617) 722-9954