UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMY LIMOLI,

                          Plaintiff,

          v.

                                                    C.A. No. 1:18-cv-10561

DELTA AIRLINES, INC. AND
MYKAL DENT,

                          Defendants.

### DECLARATION OF MYKAL DENT IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Mykal Dent, make the following declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

1.      I am over the age of 18 and competent to make the statements below.  I have personal knowledge of the matters set forth in this Declaration.  If called upon as a witness, I could and would competently testify to the following.

2.      I am an Operations Service Manager ("OSM") for Delta Air Lines, Inc. ("Delta") at Hartsfield-Jackson International Airport in Atlanta, Georgia.  I started at Delta on or about February 9, 2009 within the Airport Customer Service/Cargo Department as a Baggage Handler.  On or about May 1, 2011, Delta promoted me to OSM, the role which I currently hold.  I held this position at Boston Logan International Airport ("Logan Airport") at the time of Amy Limoli's employment termination.

3.      As an OSM, I manage "above-the-wing" operations within the ACS/Cargo Department.  Above-the-wing employees provide customer service to Delta's millions of passengers at airports across the globe.  Above-the-wing employees are categorized into two

groups: Customer Service Agents ("CSA") and Passenger Service Agents ("PSAs" or "Red Coats"). CSAs are responsible for checking-in passengers and their luggage, handling ticketing, and answering customer service-related inquiries from passengers. Red Coats assume the same customer service duties as CSAs but also supervise the CSAs, resolve conflicts, and address customer service-related issues.

4. My duties as OSM include managing Delta's ground and customer service operations, ensuring compliance with Federal Aviation Administration regulations, procedures, and policies, and managing PSAs and CSAs. Part of these duties include leading a shift-briefing meeting at the start of every shift to discuss important details including, but not limited to, passenger loads of inbound and outbound flights; expected challenges such as weather delays, flight restrictions or private charters; passenger fee waivers; and answering questions and concerns that any employees may have. The shift-briefing meeting is a mandatory meeting attended by myself and the other OSMs, CSAs, and PSAs and it begins promptly at the start of the shift.

5. I also am responsible for conducting investigations into employee misconduct. An investigation may entail: speaking and interviewing employees, examining Company documents, such as timekeeping records; requesting that employees draft witness statements; and coordinating with the Station Director, Department Manager, and Human Resources Manager to determine the appropriate level of discipline.

6. As an OSM, I do not have the authority to hire or fire employees. Regarding the hiring process, I interview potential candidates and offer recommendations on who Delta should hire. The Station Director has the final and sole authority to select candidates for hire. Similarly, I do not have the authority to fire employees. I may, based on an investigation, recommend that Delta terminate an employee's employment. However, the recommendation must be approved by

the Department Manager, my direct supervisor, and the Station Director.  Human Resources also must approve employment termination.  On at least one occasion, I recall that the former Station Director at Logan Airport, Alexandra Nordquist, refused to follow my recommendation that an employee's employment be terminated.

7.      I do not have control over CSA or PSA work schedules.  Every six months, CSAs and PSAs bid for their shift assignments, which include their work days and work hours.  I have no say whatsoever in employees' rate or method of pay.  I do not maintain an employee's personnel records other than documents that I draft and send to Human Resources to place in an employee's personnel file.  I also have no decision-making authority concerning an employee's request for leave under the Family Medical Leave Act ("FMLA").  Requests, approvals or denials of FMLA leave are handled by Sedgwick, a third-party vendor for Delta.

8.      At Logan Airport, Delta's time-keeping computer for Red Coats and CSAs is located in the employee break room within Terminal A behind the Delta ticketing counter.  To clock-in, an employee physically takes his or her badge and swipes the card into a reader while selecting either  "clock-in" or "clock-out" to indicate the start or end of their shift, respectively. After an employee clocks in for work, Delta expects that the employee is in fact at work and ready to begin their shift and perform their duties.

9.      On March 30, 2017, I was assigned as the OSM for the 12:00 p.m. to 8:30 p.m. shift.  OSM Gabriella Spagnolo, Ms. Limoli's direct supervisor, was off that day.  Accordingly, I and the other OSM on duty, Beth Cerqueira, filled-in as supervisors for Ms. Spagnolo's direct reports.

10.      Shortly before the shift-briefing meeting started, Customer Service Agent ("CSA") Kim Dun approached me and OSM Cerqueira and informed us that she observed Ms. Limoli in

the lobby of Terminal A and that Ms. Limoli told her that "she would be right back." Exh. A (Dent Statement at DELTA_0000092-93). I observed Ms. Limoli arrive late to the shift-meeting at approximately 12:04 p.m. after the meeting had already started. Based on CSA Dunn's and my observations, I interviewed Ms. Limoli at approximately 7:30 p.m. on March 30, 2017 to determine why she had been late. I met with her privately and asked her about her attendance. Specifically, I asked her, if she clocked in at 11:56 p.m., why did she arrive late to the shift-briefing. Ms. Limoli admitted that she briefly parked curbside, clocked-in for work, and returned to her vehicle to park it at Central Parking. I asked her that same night to write a statement but she claimed that she was too upset to write a statement. I asked OSM Cerqueira to speak with Ms. Limoli. It is my understanding that Ms. Limoli did not write a statement that night but that she went home and wrote her statement the following day, March 31, 2017, which she e-mailed to OSM Cerqueira.

11.    I prepared a statement of the incident and e-mailed it to my manager Michael Morrison. Exh. A (Dent Statement at DELTA_00000092-93).

12.    I sent an e-mail to Human Resources Manager Eve Rogers to determine what level of Performance Development ("PD") should be given to Ms. Limoli based on her admitted conduct. My initial recommendation was for Ms. Limoli to receive a "Corrective Action Notice" and be removed from the Red Coat program (i.e. a demotion to CSA). Exh. B (Dent email to Eve Rogers at DELTA_0000067-68). Ms. Rogers replied and explained that Ms. Limoli's conduct was considered time-theft by the Company and warranted termination. *Id.* Based on this information from HR, I recommendation Ms. Limoli's employment terminated. *See* Exh. C (Dent Recommendation for Termination at DELTA_00001841-1842).


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON THIS 20 DAY OF JUNE, 2019.

Mykal Dent.