UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

AMY LIMOLI,

                              Plaintiff,

        v.

                                                    C.A. No. 1:18-cv-10561-FDS

DELTA AIRLINES, INC. AND
MYKAL DENT,

                              Defendants.

**DECLARATION OF MANETTE ROGERS IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

        I, Manette ("Eve") Rogers, make the following declaration under penalty of perjury

pursuant to 28 U.S.C. § 1746.

        1.      I am over the age of 18 and competent to make the statements below.  I have

personal knowledge of the matters set forth in this Declaration.  If called upon as a witness, I could

and would competently testify to the following.

        2.      I am a Senior Human Resources Manager, Technical Operations Division for

Delta Air Lines, Inc. ("Delta").  I started employment with Delta on or about November 2014

holding many positions within Delta's Human Resources ("HR") department since then.  From

November 2014 to June 2017, I held the title of HR Manager Airport Customer Service/Cargo.

I then became Manager of Employee Engagement in June 2017 and held that position until

October 2018.  In October 2018, I started my current role as Senior HR Manager, Technical

Operations Division.

        3.      Headquartered in Atlanta, Delta is one of the largest international airlines and

serves more than 180 million passengers annually.  Delta employs over 85,000 employees

worldwide. It operates a fleet of more than 900 aircraft at over 50 U.S. airports including Boston-Logan International Airport ("Logan Airport"). In April 2008, Delta and Northwest Airlines announced a merger to create one of the largest international airlines with the name Delta Air Lines, Inc.

4.    Because of my former position of HR Manager for ACS/Cargo, I am familiar with Delta's operations and policies. As a day-to-day HR resource, I also have extensive experience that includes: answering benefits inquiries, investigating employee cases of misconduct, working with and assisting local management with investigating such misconduct, coordinating employee performance development, and reviewing, accepting, or rejecting recommendations for employee discipline up to and including employment termination.

5.    In my HR role, I oversaw the HR operations for 13 airports in the Northeast, including large international airports such as Boston, Washington-Reagan, Washington-Dulles, and Philadelphia.

6.    Whenever local leadership at one of my 13 airports recommended an employee's termination, I would review the recommendations. My review generally would include: communicating with local leadership to assess whether termination is warranted; reviewing any underlying supporting documentation as well as applicable customer requirements, contractual obligations, and performance standards; make follow-up requests, as needed, for additional or clarifying information; conferring with Delta's equal opportunity office and other HR managers to determine whether comparable incidents are available, and then exercise my independent judgment to either approve the recommendation, decline the recommendation, or recommend that a lesser disciplinary action take place. If I approve a termination recommendation, I send my recommendation to the General Manager of HR, who at the time was Josh Jessup for approval.

2

7.     Delta maintains a Family and Medical Leave policy within its Healthcare Benefits Handbook and is posted on its intranet, both of which are accessible to all Delta employees.  Exh. A at DELTA_00000415 (excerpts to Delta's Healthcare Benefits Handbook), DELTA_00002049-2050 (Delta Intranet).

8.     Delta expects all of its employees to accurately report their working time.  Delta maintains employee guidelines in its manual, *The Way We Fly*.  *The Way We Fly* requires all employees to "Keep Accurate & Honest Records" as part of their employment.  Exh. B (*The Way We Fly* DELTA_00002059-2090 at 2082).  The policy directs that every employee must ensure that any reporting of information "is accurate, honest, and timely."  The *Way We Fly* specifies that "Theft and Misappropriation Are Prohibited" and lists a non-exhaustive list of prohibited conduct, including "Falsifying records, including time cards, work records, or business expense reports." *Id.* at DELTA_00002061.

9.     Delta HR considers misrepresenting time a terminable offense.  Between 2014 and 2017, approximately thirty-four employees nationwide for time-clock violations, eight of whom were based in Boston.  In fact, I recommended the termination of seven Delta employees for misrepresenting their timekeeping records by clocking-in for work then leaving to park their vehicles, the same conduct Amy Limoli acknowledged doing on March 30, 2017.  Such conduct is deemed a one-time terminable offense, meaning that regardless of whether an employee has a Performance Development (i.e. disciplinary) record, engaging in time-fraud warrants immediate employment termination.

10.    Specifically, I recommended termination for the following seven employees who misrepresented their time by clocking-in before parking:

        a.  Employee ID No. ("EIDN") 888950 – Philadelphia (PHL), *see* Exh. C at DELTA_00002103;

      b.  EIDN 047472 – Pittsburgh (PIT), *see* Exh. D at DELTA_00003057;

      c.  EIDN 697433 – Pittsburgh (PIT), *see* Exh. E at DELTA_00003064;[1]

      d.  EIDN  432912 – Washington DC-Dulles (IAD), *see* Exh. F at DELTA_00003067;

      e.  EIDN 091923300 – Washington-Reagan (DCA), *see* Exh. G at DELTA_00002091;

      f.  EIDN 788934 – Boston (BOS), *see* Exh. H at DELTA_00003078; and

      g.  Amy Limoli – Boston (BOS), *see* Exh. I at DELTA_00001841.

These seven employees, including Boston employees Amy Limoli and EIDN 788935, all punched-in to avoid being marked tardy and proceeded to park their vehicles after clocking-in for work.

11.      Amy Limoli is a former Passenger Service Agent ("PSA" or Red Coat).  Prior to the Delta-Northwest merger, Ms. Limoli was a Northwest Airline Customer Service Agent ("CSA") Supervisor.  After the merger, on or about December 10, 2011, Ms. Limoli became a full-time Delta employee and assumed the role of PSA/Red Coat.

12.      On March 31, 2017, Operations Service Manager ("OSM") Mykal Dent e-mailed me that Amy Limoli had parked her car at curbside and clocked-in for work.  *See* Exh. J (Dent e-mail to Rogers at DELTA_0000067-68).  After clocking-in, Ms. Limoli returned to her vehicle and drove it to the parking garage.  Mr. Dent asked me if I knew of any other any employees who engaged in similar behavior (i.e. "comps"), and what the appropriate Performance Development ("PD") or discipline should be.  *Id.*  Relying on my previous experience handling the termination of six other employees clocking-in and parking, I emailed OSM Dent and explained that Ms. Limoli's conduct is "time theft and the recommendation is typically termination."  *Id.*

---

[1] Delta terminated EIDN 697433 for clocking-in another employee, EIDN 047472, which allowed the latter to park a personal vehicle and avoid being marked tardy.

13. On April 1, 2017, Mr. Dent sent me a Recommendation for Termination ("RFT") for Ms. Limoli which he also sent to his department manager Michael Morrison. Exh. K (Dent RFT at DELTA0001842-43). Mr. Dent's RFT recommended Ms. Limoli's employment termination because she parked at the Terminal A curbside departure area, clocked-in for work, then immediately left to park her car in order to avoid being marked tardy; she admitted to the misconduct in a statement provided to Delta; and Delta had documentary evidence of her parking garage receipt. *Id.*

14. In addition to Mr. Dent's RFT, I reviewed the following written statements: Ms. Limoli (Exh. L at DELTA_0000089-91), Mr. Dent (Exh. M at DELTA_0000092-93), Customer Service Agent ("CSA") Kim Dunn (Exh. N at DELTA_0000094), and OSM Beth Cerqueira (Exh. O at DELTA_0000057-58). In Ms. Limoli's statement, she admitted to the time-fraud, explaining that "I finally arrived at the terminal and I ran inside and I punched in at 1156 [a.m.] then I ran back out to my vehicle" which she drove to Central Parking and received a time-stamped receipt for 11:58:32 a.m. *See* Exh. L at DELTA_0000089-90.

15. Ms. Dunn's statement corroborated Ms. Limoli's admission as Ms. Dunn saw Ms. Liomli return to her vehicle after clocking-in. At the time, Ms. Dunn was a Customer Service Agent ("CSA") and was not, as Ms. Limoli claimed, an Operations Service Manager ("OSM"). The position of CSA is subordinate to PSA/Red Coat; indeed, PSAs like Ms. Limoli supervise the work and conduct of CSAs.

16. On April 7, 2017, I approved Ms. Limoli's employment termination. Exh. I (Rogers RFT at DELTA_00001841). In approving the termination recommendation, I based my decision on Ms. Limoli's deliberate attempt to avoid being marked tardy for work by clocking-in then immediately leaving work to park her car, Delta's consistent practice of terminating

employees for a first offense of time fraud, Ms. Limoli's statement in which she admitted to the misconduct, and the statements of Mr. Dent, Ms. Cerqueira, and Ms. Dunn.

17.    In none of the seven recommendations for termination for time-clock fraud involving clocking-in before parking – including Ms. Limoli's case – did I consider an employee's history of taking FMLA leave.  Indeed, in the case of the employment terminations of EIDNs 091923300, 788934, and 697433, a review of Company records reveals that they never requested leave under the Family Medical Leave Act.

18.    Discharged employees may appeal their terminations to the Equal Opportunity Office.  It is my understanding that Ms. Limoli appealed her termination and it was denied.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]


37686443.1

6

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON THIS 20th DAY OF JUNE, 2019.

Eve Rogers